**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAVINO 5, INC., an Illinois Corporation; CARLA LYONS SAVINO, <br><br> Plaintiffs, <br><br> vs. <br><br> SAVINO SNOW & ICE CONTROL, INC. an Illinois Corporation; ANTHONY SAVINO, II, ANTHONY SAVINO, and CBRE, Inc., a Delaware Corporation, <br><br> Defendants. | Case No. |

**PLAINTIFFS' COMPLAINT AND JURY DEMAND AND INJUNCTIVE RELIEF**

The Plaintiffs, SAVINO 5, INC. ("Savino 5") and CARLA LYONS SAVINO ("Carla") (collectively, "Plaintiffs"), by their attorneys, Julia J. Smolka and Matthew E. Suhl of Robbins DiMonte, complains of Defendants, SAVINO SNOW & ICE CONTROL, INC. ("SSIC"), ANTHONY SAVINO, II ("Anthony II"), and ATHONY SAVINO ("Anthony") (collectively, the "Plow Defendants") and CBRE, Inc. ("CBRE") (collectively, "Defendants") and states as follows:

**NATURE OF THE ACTION**

1.  This is an action brought by Plaintiffs Savino 5, Inc. and Carla Lyons Savino, arising under the trademark laws of the United States, the trademark and unfair business practice laws of the State of Illinois, common law of the State of Illinois, and the statutes of the State of Illinois.

2.  This action results from, *inter alia*, Plow Defendants' willful appropriation of Plaintiffs' consumer goodwill and recognition through their use of an identical business name (Savino Snow & Ice Control) and trademark (the "Plow Logo") that are confusingly similar to those that were well established by Plaintiffs. Plow Defendants' use of the Savino Snow & Ice Control name and Plow

Logo damages the established goodwill in Plaintiffs' trademarks. Further, Plow Defendants have unjustifiably targeted Plaintiffs' business partners and through deception, confusion, false material representations, and disparagement of Plaintiffs' business, caused them to terminate or breach their valid agreements with Plaintiffs.

3. Plow Defendants have also, intentionally and without justification, interfered with the lease of the facility Plaintiffs used for business operations. Plow Defendants willfully and unjustifiably took control of the facility and all of the equipment (including, but not limited to, plows, skid loaders, and office equipment) required to operate Plaintiffs' business. Plow Defendants used this equipment and the wrongfully acquired facility address to operate an identical business to Plaintiffs' utilizing the same business name (Savino Snow & Ice Control) and Plow Logo that Plaintiffs had operated under since 2014. Plow Defendants willfully, unjustifiably, and without authority used the wrongfully acquired marks to deceive Plaintiffs' customers into rerouting electronic payments and checks away from Plaintiffs and to Plow Defendants. Plow Defendants used the wrongfully acquired marks to convince and confuse Plaintiffs' customers to enter into new agreements with Plow Defendants, diverting business away from Plaintiffs.

4. Plow Defendants also willfully and unjustifiably incurred expenses under Plaintiffs' names and marks and willfully and unjustifiably represented Plaintiffs' business insurance as its own, utilizing the wrongfully acquired marks and deceptive business practices.

5. Though contracted to pay Plaintiffs in exchange for plow and landscaping services, CBRE willfully and unjustifiably breached its agreements by refusing to pay Plaintiffs for provided services. Instead, CBRE permitted Plow Defendants to change all Savino 5 banking and contact information to that of Plow Defendants and, despite being informed by Carla that these changes were not proper, conspired with Plow Defendants to pay Plow Defendants for Savino 5 services.

2

6.     Plow Defendants and CBRE conspired to breach the agreements between CBRE and Plaintiffs for the benefit of Plow Defendants.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121. In addition, this Court has supplemental jurisdiction over Plaintiff's state law and common law claims pursuant to 28 U.S.C. § 1367(a) because they are substantially related to its federal claims and arise out of a common nucleus of operative fact and form part of the same case or controversy.

8.     This Court has personal jurisdiction over Savino Snow & Ice Control, Inc. because it is a corporation with its headquarters in Franklin Park, Illinois. This Court has personal jurisdiction over Anthony Savino because he is a resident of the State of Illinois and resides in Mundelein, Illinois. This Court has personal jurisdiction over Anthony Savino, II because he is a resident of the state of Illinois and resides in Mundelein, Illinois. This Court has personal jurisdiction over CBRE, Inc. because CBRE is licensed to do business in Illinois and has an office in Oak Brook, Illinois.

9.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants reside in this judicial district and because a substantial part of the events giving rise to this action occurred in this judicial district.

## PARTIES

10.     CARLA LYONS SAVINO is a citizen of the State of Illinois and resides in Cook County.

11.     SAVINO 5, INC. is a corporation organized under Illinois law with its principal place of business at 7558 West Bryn Mawr Ave., Chicago, Illinois 60631.

12.     SAVINO SNOW & ICE CONTROL is a corporation organized under Illinois law with its principal place of business at 10170 Franklin Ave., Franklin Park, Illinois.

13.     ANTHONY SAVINO, II is a citizen of the State of Illinois who resides at 19429 Forest Avenue, Mundelein Illinois, 60060, in Lake County.

14.     ANTHONY SAVINO is a citizen of the State of Illinois who resides at 19429 Forest Avenue, Mundelein Illinois, 60060 in Lake County.

15.     CBRE, INC. is a Delaware Corporation licensed to do business in Illinois with its principal office located at 2121 Pearl Street, Suite 300, Dallas, Texas 75201 and an Illinois office located at 700 Commerce Drive, Oak Brook Illinois 60523.

## FACTUAL ALLEGATIONS

16.     Prior to 2014, Anthony Savino II operated a small, unregistered business as Savino Snow & Ice Control. Savino Snow & Ice Control used an early version of what would later be reimagined as the Plow Logo. This early business did not register any marks or widely advertise its services. It did a small amount of business throughout northern Illinois.

17.     Carla Lyons Savino (then Carla Lyons) and Anthony Savino II entered into a romantic relationship. They were married on April 1, 2017.

18.     During their relationship, but prior to any plans to marry, Carla and Anthony II agreed that Carla would set up and register Savino 5, Inc. as a new business in order to offer snow and ice removal and landscaping services in northern Illinois.

*Savino 5 Business roles and ownership of trademarks*

19.     Anthony II and Carla agreed that the Savino Snow & Ice Control mark and its then-logo would belong to Carla and the newly-formed Savino 5. Anthony II did not have any ownership nor did he invest any equity in Savino 5. He was at all relevant times an independent contractor who engaged in plow-driving and limited administrative and customer services roles with Savino 5. The agreement granting the relevant marks to Savino 5 has never been rescinded. Since its inception in 2014, Savino 5 has operated using Savino Snoe and Ice Control mark and Plow Logo.

20.     On April 23, 2014, Carla registered Savino 5, Inc. with the Illinois Secretary of State and began operating as Savino 5, Inc. At all times, Carla has been listed as the registered agent, Director, and President of Savino 5. Savino 5 is at present still registered as an active corporation with the Illinois Secretary of State.

21.     At all relevant times, Savino 5's registered address with the Illinois Secretary of State has been 7558 West Bryn Mawr Ave., Chicago, Illinois 60631.

22.     Neither Anthony or Anthony II have ever been an officer, director, or registered agent for Savino 5. Anthony II has been an independent contractor for Savino 5 since its inception. Neither Anthony or Anthony II have ever been an employee of Savino 5.

23.     Since its inception on April 23, 2014, Savino 5 has used the Savino Snow & Ice Control mark.

24.     Since its inception on April 23, 2014, Savino 5 has used some version of the Plow Logo. In 2019, Carla and Savino 5 paid for professional services to create what is now the Plow Logo, based on the earlier logo Savino 5 had been using since 2014.

25.     At all relevant times, Savino 5's business materials, advertising, invoices, and letterhead clearly stated that Savino Snow & Ice Control was a division of Savino 5 and utilized the Plow Logo:

**Savino 5 Inc.**
7558 West Bryn Mawr Ave
Chicago, IL  60631 US
savino5inc@icloud.com
(A Division Of Savino 5 Inc)



INVOICE

and

**INVOICE**
Savino 5, Incorporated
7558 W Bryn Mawr Ave
Chicago, IL 60631

savino5inc@gmail.com
+1 (312) 905-3296
Savino Snow & Ice Control



26.     Since Savino 5's inception, Carla has not taken a salary from Savino 5. Since Savino 5's inception, Carla has invested capital into Savino 5 to purchase equipment, advertise, and secure a lease for the facility located at 10170 Franklin Ave., Franklin Park, Illinois (the "Franklin Park Facility").

*Savino 5, Inc. establishes a customer base and brand reputation in the northern Illinois area*

27.     Since its inception, Savino 5 has grown its customer base and has become known for its landscaping and snow and ice removal services in northern Illinois through its use of the Plow Logo and Savino Snow and Ice Removal marks. Savino 5's current revenue is approximately 20 times the revenue of the pre-2014 iteration of Savino Snow & Ice Control.

28.     Savino 5 operated snow and ice removal services throughout northern Illinois under the Savino Snow & Ice Control mark from 2014 through the present. For the entirety of that period, Plaintiffs have associated their business with the Plow Logo and Savino Snow & Ice Control Marks.

29.     Since its inception, Plaintiffs' business operations have become known throughout northern Illinois as Savino Snow & Ice Control. Throughout northern Illinois, the Plow Logo has become recognizable among Plaintiffs' customers as that of Plaintiffs' business.

*Anthony Savino II begins operating a competing business using Plaintiffs' equipment, facility, contacts, and business liability insurance*

30.     On or around November 8, 2024, Carla and Anthony II separated.

31. On December 6, 2024, Anthony II registered a business with the Illinois Secretary of State that was separate and distinct from Savino 5, Inc. and its Savino Snow & Ice Control operating name. Anthony II registered his business as Savino Snow & Ice Control.

32. At all relevant times, including when he created SSIC, Anthony Savino II was aware of the existence of Savino 5 and its protected marks, including the Savino Snow & Ice Control name and Plow Logo.

33. Beginning in December 2024, Plow Defendants emailed Plaintiffs' customers, using Plaintiffs' marks, to indicate that Savino 5 had changed its contact information. Plow Defendants indicated to Plaintiffs' customers that its new business email was savinosnowice@icloud.com; that its billing address was 19429 Forest Avenue, Mundelein Illinois, 60060 (the "Mundelein Address"), and future business inquiries should be directed to these methods of contact. All of the methods of contact led to Anthony II, cutting Carla out of the chain of contact with her own customers. Anthony Savino and Athony Savino II reside at the Mundelein Address. Anthony II presented this information to Plaintiffs' customers knowingly, willingly, and unjustifiably.

34. On or around January 2025, Plow Defendants locked Savino 5 and Carla out of the Franklin Park Facility by conspiring with the facility's landlord. The Franklin Park Facility housed an office for Savino 5 and all of the plowing and snow removal equipment owned by Savino 5. Once Plow Defendants obtained exclusive access to the Franklin Park Facility, Plow Defendants informed Plaintiffs' customers that its billing address was that of the Franklin Park Facility.

35. After Plow Defendants locked Plaintiffs out of the Franklin Park facility, Plow Defendants operated from that facility as a new company utilizing an identical name and logo as Plaintiffs' business:

**INVOICE**

Savino Snow & Ice Control
10170 Franklin Ave
Franklin Park, IL 60131

savinosnowice@icloud.com
+1 (847) 878-9345
Savino Snow & Ice Control



36. Plow Defendants' only changes to Plaintiffs' letterhead were to the contact information and the removal of the name Savino 5 from the business address. Plow Defendants continued to use the Plow Logo and operate under Plaintiffs' Savino Snow & Ice Control mark. Plow Defendants did not inform the public or Plaintiffs' customers that they were a business distinct from Savino 5, who had been using Savino Snow & Ice control as its "d/b/a" to provide snow and ice removal and landscaping services in northern Illinois since 2014.

37. Anthony II, while communicating with Plaintiffs' clients to divert funds and business to SSIC, presented Savino 5's liability insurance as that of SSIC. Anthony II presented this information to Savino 5 customers knowingly, willingly, and unjustifiably.

38. Plaintiffs have lost business and customers due to Plow Defendants' infringing conduct. Plaintiffs have also suffered losses due to the conversion of the property at the Franklin Park Facility.

39. Plaintiffs have lost the base of their business operations due to Plow Defendants' interference with their lease of the Franklin Park Facility and infringing conduct.

*Savino 5's Contractual Relationship with CBRE and CBRE's breach of the Agreement*

40. CBRE and Plaintiffs have entered into multiple valid contracts since 2023. In those contracts, CBRE agreed to pay Savino 5 and Carla in exchange for landscaping and snow and ice removal services. Between November 2024 and May 2025, a valid contract (the "Agreement") existed

8

between Plaintiffs and CBRE. The Agreement listed Carla as the primary point of contact between the parties and the only point of contact regarding payment to Savino 5.

41.     Although Carla indicated to CBRE that she is the sole point of contact for all accounts payable and receivable, and although Tony is specifically designated as a non-primary point of contact between CBRE and Savino 5, CBRE permitted Anthony II to change all methods of contact and banking information between Savino 5 and CBRE to those of Plow Defendants. CBRE permitted Anthony II to cut Plaintiffs out of the contact with CBRE.

42.     After Plow Defendants initially mislead CBRE and cut Plaintiffs out of contact, CBRE worked with Plow Defendants to divert payments away from Plaintiffs. In a January 10, 2025 communication between CBRE and Anthony II, agents of CBRE expressed a desire to "stop any of these checks if [Anthony II] think[s] [Plaintiffs] may still get them or be able to find them."

43.     CBRE refused to pay Plaintiffs for services rendered and instead paid Plow Defendants.

**COUNT I:     UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a) (Against Plow Defendants)**

44.     Plaintiffs specifically incorporate and reallege each of the foregoing allegations in each of the preceding paragraphs as if fully set forth herein.

45.     The business name Savino Ice and Snow Control is a protected mark owned by Plaintiffs – it is inherently distinctive. Alternatively, the name Savino Snow & Ice Control obtained secondary meaning through Plaintiffs' use of the name in conjunction with Plaintiffs performing snow and ice removal services in northern Illinois.

46.     The Plow Logo is inherently distinctive. It has been used to identify Plaintiffs' snow and ice removal services since 2014 in and around the northern Illinois region.

47.     The Plow Logo and Savino Snow & Ice Control names have been, and continue to be, known throughout the northern Illinois region as identifying and distinguishing Plaintiffs' services in the landscaping and snow and ice removal markets.

48.     Plaintiffs have a protectible interest in the name Savino Snow & Ice Control.

49.     Plaintiffs have a protectable interest in the Plow Logo.

50.     Plow Defendants' business name, "Savino Snow & Ice Control" is identical to Plaintiffs' in every respect. Further, Plow Defendants' use of the Savino Snow & Ice Control mark is used to offer identical services to Plaintiffs' in a geographic area identical to Plaintiffs.

51.     Plow Defendants' imitation of Plaintiffs' trademarks is calculated to deceive purchasers of snow and ice removal services in northern Illinois and has misled, and still misleads, purchasers to purchase services from Plow Defendants in the belief that they are purchasing services from Plaintiff.

52.     Plow Defendants' infringing activities commenced and have continues despite Plow Defendants' knowledge of Plaintiffs' rights to the Savino Snow & Ice Control name and Plow Logo marks. Plow Defendants have knowledge that they do not have the rights to either mark.

53.     By the foregoing acts and otherwise, Plow Defendants will continue to infringe on Plaintiffs' rights in their Savino Snow & Ice Control business name and Plow Logo unless restrained by this Court. Plaintiffs have been, and continue to be, damaged by Plow Defendants' activities and conduct. Plow Defendants have profited thereby, and unless enjoined, Plaintiffs' reputation, goodwill, and legal right to operate and expand services will continue to suffer irreparable injury that cannot be adequately addressed, calculated or compensated by money damages. Accordingly, Savino 5, Inc. and Carla Lyons seek injunctive relief.

54.     By intentionally using marks that are identical or confusingly similar to Plaintiffs' Savino Snow & Ice Control and Plow Logo marks, Plow Defendants have created irreparable harm

to Plaintiffs' reputation and goodwill; they have damaged Plaintiffs. Accordingly, Savino 5, Inc. and Carla Lyons Savino are entitled to damages they can establish, including but not limited to an accounting of all profits that Plow Defendants have derived from their unlawful use of Plaintiffs' marks and any related marks and award of their actual damages (trebled), together with reasonable attorneys' fees.

**COUNT II: STATE COMMON LAW TRADEMARK INFRINGEMENT (Against Plow Defendants)**

55.     Plaintiffs specifically incorporate and reallege each of the foregoing allegations in each of the preceding paragraphs as if fully set forth herein.

56.     This is a cause of action for trademark infringement under Illinois common law.

57.     Plaintiff owns all rights and interests in the Savino Snow & Ice Control and Plow Logo marks.

58.     Plaintiffs' Savino Snow & Ice Control mark is inherently distinctive or has acquired secondary meaning among relevant consumers in northern Illinois.

59.     Plaintiffs' Plow Logo mark is inherently distinctive or has acquired secondary meaning among relevant consumers in northern Illinois.

60.     The Savino Snow & Ice Control mark has been and continues to be, known in northern Illinois and throughout the great lakes region as identifying and distinguishing Plaintiffs' goods and services in the snow and ice removal and landscape services market.

61.     Plow Defendants' Savino Snow & Ice Control and Plow Logo marks are identical to Plaintiffs' Savino Snow & Ice Control and Plow Logo marks in appearance, sound, connotation, commercial impression, and meaning that the sale of services in northern Illinois by Plow Defendants in connection with the Savino Snow & Ice Control and Plow Logo marks are likely to cause consumer confusion, mistake, or deception as to the affiliation, connection, or association of SSIC with Savino 5, or vice versa, and/or as to the origin, sponsorship, or approval of Plow Defendants' services by

Plaintiffs. Such confusion, mistake, or deception will injure and damage Plaintiffs and the goodwill and reputation symbolized by Plaintiffs' Savino Snow & Ice Control and Plow Logo marks.

62. Plow Defendants' infringing activities commenced, and have continued, despite Plow Defendants' knowledge of Plaintiffs' rights in and to the Savino Snow & Ice Control and Plow Logo marks and/or with Plow Defendants' knowledge that Plow Defendants do not have a right to use Plaintiffs' marks.

63. By using marks identical or confusingly similar to Plaintiffs' Savino Snow & Ice Control and Plow Logo marks and by offering for sale services to the snow and ice removal and landscaping markets under such marks, for profit and without Plaintiffs' authorization, Plow Defendants are depriving Plaintiffs of their exclusive right to control and benefit from their marks.

64. By the foregoing acts and otherwise, Plow Defendants will continue to infringe on Plaintiffs' rights in their distinctive Savino Snow & Ice Control and Plow Logo marks unless restrained by this Court.

65. Plaintiffs have been, and continue to be, damaged by Plow Defendants' activities and conduct. Plow Defendants have profited thereby and, unless their conduct is enjoined, Plaintiffs' reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, Plaintiffs seek injunctive relief and monetary damages to compensate them for harm caused by Plow Defendants' infringing conduct.

**COUNT III: VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT – 815 ILCS § 510 *et. seq.* (Against Plow Defendants)**

66. Plaintiffs specifically incorporate and reallege each of the foregoing allegations in each of the preceding paragraphs as if fully set forth herein.

67. Plow Defendants' Savino Snow & Ice Control and Plow logo marks are identical Plaintiffs' Savino Snow & Ice Control and Plow Logo marks in appearance, sound, connotation, commercial impression, and meaning. Plow Defendants' use of the Savino Snow & Ice Control and

12

Plow Logo marks in connection with the sale of services in northern Illinois is intended to pass of goods or services as those of Plaintiffs. Plow Defendants' passing off services as those of Plaintiffs will injure and damage Plaintiffs and the goodwill and reputation symbolized by Plaintiffs' Savino Snow & Ice Control and Plow Logo marks. 815 ILCS §§ 510/2 (a)(1).

68.     Plow Defendants' Savino Snow & Ice Control and Plow Logo marks are identical to Plaintiffs' Savino Snow & Ice Control and Plow Logo marks in appearance, sound, connotation, commercial impression, and meaning that the sale of services in northern Illinois by Plow Defendants in connection with the Savino Snow & Ice Control and Plow Logo marks are likely to cause consumer confusion, mistake, or deception as to the affiliation, connection, or association of SSIC with Savino 5, or vice versa, and/or as to the origin, sponsorship, or approval of Plow Defendants' services by Plaintiffs. Such confusion, mistake, or deception will injure and damage Plaintiffs and the goodwill and reputation symbolized by Plaintiffs' Savino Snow & Ice Control and Plow Logo marks. 815 ILCS §§ 510/2 (a)(2)-(3), (a)(5), and (a)(12).

69.     Plow Defendants have disparaged Plaintiffs' business and services by making false or misleading material representations and have intended and caused third parties to rely on the same. 815 ILCS § 501/2(a)(8).

70.     Plow Defendants have further falsely advertised its snow and ice removal and landscaping services with intent not to market its services as advertised. 801 ILCS § 501/2(a)(9).

71.     Plow Defendants' actions were and continue to be willful and malicious.

72.     Plow Defendants have made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

73.     Upon information and belief, Plow Defendants intend to continue their infringing acts unless restrained by this Court.

74.     Plow Defendants acts have damaged and will continue to damage Plaintiffs and the public. Plaintiff and the public have suffered and continue to suffer irreparable harm and have no adequate remedy at law.

**COUNT IV:  VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT – 815 ILCS § 505/1 *et. seq.* – UNFAIR COMPETITION (Against Plow Defendants)**

75.     Plaintiffs specifically incorporate and reallege each of the foregoing allegations in each of the preceding paragraphs as if fully set forth herein.

76.     Plow Defendants' mislabeling and/or descriptions of its SSIC snow and ice removal and landscaping services constitutes a fraud and deception upon Plow Defendants' and Plaintiffs' customers.

77.     These and others of Plow Defendants' acts further constitute unfair competition in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 ILCS § 505 *et seq.*

78.     Plow Defendants' actions were willful and malicious.

79.     Plow Defendants have made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

80.     Upon information and belief, Plow Defendants intend to continue their infringing acts, unless restrained by this Court.

81.     Plow Defendants' acts have damaged and will continue to damage Plaintiffs. Plaintiffs are suffering and will continue to suffer irreparable harm and Plaintiffs have no adequate remedy at law.

**COUNT V:  STATE LAW TORTIOUS INTERFRENCE WITH CONTRACTS AND/OR BUSINESS EXPECTANCY (Against Plow Defendants)**

82.     Plaintiffs specifically incorporate and reallege each of the foregoing allegations in each of the preceding paragraphs as if fully set forth herein.

83. Plaintiffs have entered into valid and enforceable commercial contracts with third parties, regarding the providing of snow and ice removal and landscaping services, maintains ongoing business relations with the same, and has engaged in continued efforts to enter into new business relationships for the provision of snow and ice removal and landscaping services.

84. Plow Defendants have either been aware of Plaintiffs' valid contracts with third parties for snow and ice removal and landscaping services, knew of Plaintiffs' ongoing business relationships with said third parties and Plaintiffs' expectancy that its business relationships would continue, and Plaintiffs' ongoing efforts to cement new business relationships for the sale of Plaintiffs' services.

85. Plow Defendants intentionally and wrongfully interfered with Plaintiffs' business expectancy by, among other things, disparaging Plaintiffs and their services through false and misleading materials regarding the characteristics and quality of Plaintiffs' services, and false representations regarding Plow Defendants' own services.

86. As a direct and proximate result of Plow Defendants' wrongful acts, third parties have either breached their contracts with Plaintiffs, terminated business relationships with Plaintiffs, or have had the fruition of their business relationship stymied.

87. Plow Defendants acted willfully and maliciously.

88. Upon information and belief, Plow Defendants have made and will continue to make substantial profits and/or gains as a result of their conduct to which they are not in law or equity entitled.

89. Upon information and belief, Plow Defendant intends to continue its unlawful and infringing acts, unless restrained by this Court.

90. Plow Defendants' acts have damaged and will continue to damage Plaintiffs. Plaintiffs are suffering and continue to suffer irreparable harm and Plaintiffs have no adequate remedy at law.

91. Savino 5 and CBRE had a valid contract for Savino 5 to render snow and ice removal services in exchange for consideration though May 2025.

92. In January 2025, Plow Defendants, through communications with CBRE and using the Savino Snow & Ice Control and Plow Logo marks, persuaded CBRE to breach its agreement with Savino 5 and employ SSIC for snow and ice removal services.

93. By intentionally, maliciously, and fraudulently interfering with the valid business agreement between CBRE and Plaintiffs, Plow Defendants have damaged Plaintiffs in the known amount of $197,000.

94. By intentionally, maliciously, and fraudulently interfering with the valid business agreement between Exterity, LLC and Plaintiffs, Defendants have damaged Plaintiffs in the known amount of $300,000.

95. Because Plow Defendants have willingly denied Plaintiffs access to business and transactional records, the amount reflected in paragraphs 93-94 may not include all damages suffered by Plaintiffs as a result of Plow Defendants' conduct. The amount of damages Plaintiffs have suffered due to Plow Defendants' willful and malicious conduct is believed to be in excess of $300,000.

**COUNT VI: STATE LAW TORTIOUS INTERFERENCE WITH A LEASE (Against Plow Defendants)**

96. Plaintiffs specifically incorporate and reallege each of the foregoing allegations in each of the preceding paragraphs as if fully set forth herein.

97. Savino 5 and Carla had a signed, valid contract with Paoli Woodwork, Inc. (" Paoli Woodwork") in 2020 and Thomas Paoli to lease the Franklin Park Facility. In 2023, a new signed, valid lease was signed between Plaintiffs, Paoli Woodwork, Inc. and Thomas Paoli.

98. On February 1, 2025, Thomas Paoli and Paoli Woodwork locked Carla and Savino 5 out of the Franklin Park Facility.

99.     Plow Defendants, without legal justification, interfered with the business relationship between Paoli Woodwork, Inc. and Plaintiffs.

100.    Pow Defendants began using the facility immediately after Thomas Paoli and Paoli Woodwork locked Carla and Savino 5 out of the facility.

101.    Plow Defendants continue to use the Franklin Park Facility and operate SSIC out of the facility using Savino 5's equipment.

102.    Plaintiffs have been damaged because they have been unable to operate their business or serve their customers since being denied access to the Franklin Park Facility and the Savino 5-owned equipment held therein.

## COUNT VII: STATE LAW CONVERSION/MISAPPROPRIATION OF FUNDS / CHECKS (Against Plow Defendants)

103.    Plaintiffs specifically incorporate and reallege each of the foregoing allegations in each of the preceding paragraphs as if fully set forth herein.

104.    Since December 2024, Plaintiffs were entitled to possession of checks from customers of Savino 5 (doing business as Savino Snow and Ice Control). Since 2014, Plaintiffs had received checks made out to Savino 5, Inc. or Savino Snow and Ice Control.

105.    Since December 2024, Plow Defendants have wrongfully intercepted payments and checks made out to Savino 5 and deposited them in accounts belonging to Plow Defendants, including accounts belonging to Anthony II personally, wrongfully converting them for their own use.

106.    Plow Defendants have used their improper and exclusive access to the Franklin Park Facility to intercept checks and electronic payments sent to Savino 5.

107.    Plow Defendants, using Plaintiffs' Savino Snow and Ice Removal and Plow Logo marks, have deceived Plaintiffs' customers into directing payment for services to Plow Defendants.

17

108.     Though Plow Defendants have willingly accepted payments from Plaintiffs' customers, Plow Defendants have directed invoices and bills to Plaintiffs. Plow Defendants have used Carla's credit and credit cards to pay for SSIC-related expenses while denying Plaintiffs access to any revenue generated from the business that expended those funds.

109.     On May 29, 2025, Plaintiffs tendered a written demand for the return of the funds and checks converted by Plow Defendants. Plow Defendants have failed to respond to Plaintiffs' demand.

110.     As a result of Plow Defendants' wrongful conversion of checks (and funds) that rightfully belong to Plaintiffs, Plaintiffs have suffered damages.

111.     Because Plow Defendants have willingly denied Plaintiffs access to business and transactional records, the extent of damages suffered by Plaintiffs as a result of Plow Defendants' conduct cannot be calculated before discovery but is in excess of $300,000.

## COUNT VIII: STATE LAW CONVERSION OF CHATTEL/ PROPERTY (Against Plow Defendants)

112.     Plaintiffs specifically incorporate and reallege each of the foregoing allegations in each of the preceding paragraphs as if fully set forth herein.

113.     Plow Defendants conduct was willful and malicious. Plow Defendants knowingly deprived Plaintiffs of access to the equipment needed to operate Savino 5's snow and ice removal business.

114.     Plow Defendants used the converted equipment for personal gain, operating a business (SSIC) in competition with Savino 5 using Savino 5's own equipment and facility (the Franklin Park Facility).

115.     Without discovery, because Plow Defendants converted the entire Franklin Park Facility, it is not possible to specifically list every piece of property Plow Defendants converted without discovery. It is known that Plow Defendants intentionally converted the following property/chattel:

- 2003 Ford F250 Diesel pickup truck
- 2003 Chevrolet K2500 HD pickup truck
- 2017 Ford F450 dump truck
- 2020 utility trailer
- 2019 utility trailer
- Three Caterpillar 246D3 skid steer loaders
- Four skid steer buckets
- John Deer 1445 lawn mower
- John Deer 60-inch sweeper
- John Deere 42-inch plow blade
- New Holland LS180 skid steer loader
- Two Boss 10-foot push boxes
- Two Arctic sectional 8-foot push boxes
- Kage SK72 push box
- Kage SB72 push box
- Four Buyers SHPE2000 electric poly hopper spreader
- Buyers SHPE1500 electric poly hopper spreader
- Undertailgate salter
- Four Buyers VXF 95 snow plows
- Buyers VXF 85 snow plow
- Western Ultramount
- Snowblower
- 2005 Ford F250 Super Duty pickup truck
- 2023 skid steer trailer
- Toro snowblower
- 2024 Can Am Defender
- 2022 Cadillac Escalade
- Office supplies and office equipment

116. On May 29, 2025, Plaintiffs tendered a written demand for the return of the property

at the Franklin Park Facility to Plow Defendants. Plow Defendants have failed to respond to Plaintiffs'

demand and have failed to return the converted equipment.

**COUNT IX: BREACH OF CONTRACT (Against CBRE)**

117. Plaintiffs specifically incorporate and reallege each of the foregoing paragraphs in each

of the preceding paragraphs as if fully set forth herein.

118.     Plaintiffs had valid existing contracts with CBRE to provide snow and ice removal and landscaping services in exchange for payment to Plaintiffs.

119.     Plaintiffs fulfilled their obligations pursuant to the valid contractual agreements between the parties.

120.     As of this writing, in breach of their valid contractual agreements, CBRE has failed to make payment to Plaintiffs for services rendered. Instead, although Carla has indicated that she is the sole point of contact for all accounts payable and receivable, and although Tony is specifically designated as not being the primary point of contact between CBRE and Savino 5, CBRE permitted Anthony II to change all methods of contact and banking information between Savino 5 and CBRE to those of Plow Defendants.

121.     After becoming aware of Anthony II's misconduct, CBRE engaged in further communications with Anthony II and continued to pay Anthony II and SSIC funds that were contractually obligated to Plaintiffs.

122.     CBRE continued to pay Anthony II and SSIC under Plaintiffs' federal tax identification number, even after becoming aware that Anthony II was operating a business separate and distinct from Savino 5. Although contractually obligated to Plaintiffs, to date, CBRE has made none of the obligated payments to Plaintiffs.

123.     CBRE's conduct was intentional and willful.

**COUNT X:     CONSPIRACY TO COMMIT BREACH (Against all Defedants)**

124.     Plaintiffs specifically incorporate and reallege each of the foregoing paragraphs in each of the preceding paragraphs as if fully set forth herein.

125.     Plaintiffs had valid existing contracts with CBRE to provide snow and ice removal and landscaping services in exchange for payment. Both Plow Defendants and CBRE knew about the contractual business relationship between Plaintiffs and CBRE.

126.    Defendants, working together to advance their scheme, directed funds away from Plaintiffs and to Plow Defendants. These funds were contractually obligated to be paid to Plaintiffs. Defendants knew that these payments were obligated to Plaintiffs. Failure to pay makes these payments to Plaintiffs is a breach of the valid contractual agreements between CBRE and Plaintiffs.

127.    In a January 10, 2025 communication between CBRE and Anthony II, agents of CBRE communicated their plan to "stop any of these checks if [Anthony II] think[s] [Plaintiffs] may still get them or be able to find them."

128.    In furtherance of their scheme, CBRE breached the valid contractual agreements it entered into with Plaintiffs.

129.    Plaintiffs have suffered damage in the amount of $197,000 as a result of Defendants' conduct.

## COUNT IX:    INJUNCTIVE RELIEF / PRELIMINARY INJUNCTION (against Plow Defendants)

130.    Plaintiffs specifically incorporate and reallege each of the foregoing allegations in each of the preceding paragraphs as if fully set forth herein.

131.    The actions of the Plow Defendants are intentional, substantial, unjustifiable, and unreasonable.

132.    The Damages Plaintiffs have suffered and continue to suffer from the actions of Plow Defendants are without adequate remedy at law.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Savino 5, Inc. and Carla Lyons Savino demand a trial by jury on each and every claim and defense so triable.

**WHEREFORE**, Plaintiffs Savino 5, Inc. and Carla Lyons Savino pray that this Honorable Court enter an order and judgment in favor of Plaintiffs as follows:

1)     Permanent injunctive relief against Plow Defendants, its employees, partners, officers, directors, owners, vendors, and all persons acting in concert or participation with them from:

        a.   Using, displaying, and/or registering Savino Snow & Ice Control, the Plow Logo, or any trademark that is confusingly similar to Plaintiffs' Savino & Ice Control or Plow Logo trademarks for snow and ice removal or landscaping services;

        b.   Using any false or misleading description that can or is likely to misrepresent to the trade or public (or individual members thereof) the characteristics or qualities of any product or service advertised, promoted, offered, or sold by Plow Defendants, including but not limited to descriptions of snow and ice removal or landscaping services on or in any advertising medium;

        c.   Supporting, assisting, aiding, or abetting other persons or business entities in engaging or performing any of the activities enumerated in the Complaint;

        d.   Engaging in any other activity constituting trademark infringement, a violation of any federal or Illinois state law or statute;

        e.   Engaging in any other activity that constitutes a tortious interference with Plaintiffs' contracts or relationships in violation of any Illinois state law or statute;

        f.   Engaging in any other activity that constitutes conversion of any of Plaintiffs' chattel, property, checks, or funds in violation of any Illinois state law or statute;

2)   An order directing Plow Defendants to destroy:

        a.   All materials, including marketing and advertising materials and items in within their possession or control that bear the Savino Snow & Ice Control or Plow Logo

trademarks and to confirm with Plaintiffs compliance with the destruction of said materials;

b. Any information and advertisements using false or misleading content that can or is likely to misrepresent to the trade or public (including individual members thereof) the characteristics or qualities of any product or service promoted, offered or sold by Plow Defendants, including but not limited to descriptions in any advertising medium;

3) An order requiring Plow Defendants:

a. Provide an accounting to Plaintiffs for all profits wrongfully derived from Plow Defendants' infringement on Plaintiffs' Savino Snow & Ice Control and Plow Logo marks, false statements and representations, and unfair competition;

b. Recall all materials using false advertising and all infringing materials displaying Plaintiffs' Savino Snow & Ice Control and Plow Logo trademarks;

c. Require Plow Defendants to issue notices and copies of all injunctive orders and judgments in this matter to all current customers, consumers, and vendors with whom Plow Defendants have done business in the last 12 months;

d. File with this Court and serve on Plaintiffs' counsel, within 30 days of the date of any injunction or order, a written report made under oath setting forth a detailed description of Plow Defendants' compliance with the injunction and orders entered by this Court;

e. Take any and all steps necessary to restore Plaintiffs' mark recognition in all relevant markets, including corrective advertising and notice to all clients and customers of Plow Defendants;

4)     Find that Plow Defendants have used false representations and competed unfairly and have damaged Plaintiffs by the acts complained of herein;

5)     An order requiring Plow Defendants to account and pay to Plaintiffs any and all profits rising from the above-described acts of infringement, trebled, in an amount to be determined at trial;

6)  An order requiring Plow Defendants to account and pay to Plaintiffs any and all damages arising from the above-described acts of conversion of property/chattel at the current market value of the chattel converted;

7)     An order requiring Plow Defendants to account and pay to Plaintiffs any and all converted funds or checks arising from the above-described acts of conversion in an amount to be determined at trial but in any event to be no less than $300,000.

8)     An order requiring Plow Defendants to account and pay to Plaintiffs any and all diminished business opportunities arising from the above-described acts of conversion

9)     An Order requiring Plow Defendants to account and pay to Plaintiffs any and all lost opportunity, business arising form the above-described acts of conversion;

10)     An order requiring CBRE to account and pay to Plaintiffs any and all funds invoiced by but not paid to Savino 5 pursuant to the Agreement;

11)     An order awarding Plaintiffs' costs, attorneys' fees, investigatory fees, and expenses to the full extent provided by applicable law;

12)     Both pre-judgment and post-judgment interest;

13)     Such other relief as this Court find just and equitable.

**Dated: September 4, 2025**

Respectfully submitted,

Savino 5, Inc. and Carla Lyons Savino

*s/ Matthew E. Suhl*
Counsel for Savino 5, Inc. and Carla Lyons Savino

Julia J. Smolka
    ARDC # 6272466
Matthew E. Suhl
    ARDC # 6307117
Robbins DiMonte
216 W. Higgins Road
Park Ridge, IL  60068
847.698.9600
jsmolka@robbinsdimonte.com
msuhl@robbinsdimonte.com